IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID ROBERTSON, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 3:23-cv-00770 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| RYAN UPCHURCH, ) | MAGISTRATE JUDGE HOLMES |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Ryan Upchurch's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 22). Plaintiffs David Robertson and Daniel Rodni ("Plaintiffs") filed a response in opposition (Doc. No. 30), and Upchurch filed a reply (Doc. No. 32). For the reasons discussed below, the motion will be **DENIED**.

### I. FACTUAL BACKGROUND

Plaintiffs allege that Upchurch is a media personality who has approximately 3,140,000 subscribers on YouTube. (Doc. No. 9 ¶ 3). Plaintiffs also allege that Kiely Rodni, the granddaughter of Plaintiff David Robertson and daughter of Plaintiff Daniel Rodni, disappeared after a party near Tahoe National Forest on August 6, 2022. (*Id.* ¶ 6). Plaintiffs state that on August 13, 2022, after Kiely Rodni's disappearance, Upchurch began making social media post about her disappearance and offered "theories" of what happened to Kiely Rodni, including that other YouTube personalities were involved in or responsible for Kiely Rodni's disappearance. (*Id.* ¶¶ 35, 38). Kiely Rodni's body was discovered on August 21, 2022. (*Id.* ¶ 43). That same day, authorities confirmed that the body was "more than likely" Kiely Rodni and that an autopsy had been ordered to confirm the identity. (*Id.* ¶ 44). On that same date, Upchurch learned that Kiely Rodni's body had been discovered and purported to offer a "prayer" for Kiely Rodni and her

family. (*Id.* ¶¶ 46-47). On that date, Upchurch posted that "nobody should really be doing anything about this now. There really shouldn't be anything put anywhere that's gonna make her mom even more devastated than she's already gonna be." (*Id.* ¶ 47). Plaintiffs allege that Upchurch accepted on August 21, 2022, that Kiely Rodni was real, that she had died, and that further online posting relating to her could traumatize her family. (*Id.* ¶ 50).

On August 22, 2022, Upchurch posted a video in which he appeared to express his condolences to Kiley Rodni's family. (*Id.* ¶ 57). On August 23, 2022, authorities confirmed the identity of Kiely Rodni's body. (*Id.* ¶ 51). On August 28, 2022, Upchurch posted a video in which he accused the sheriff's office that identified Kiely Rodni of being a "fake police department" and stated that Kiely Rodni's disappearance was fake and that the police were involved in faking her existence and death. (*Id.* ¶¶ 62-67). On August 29, 2022, Upchurch posted a video that Kiely Rodni and her family were "not real" and that her death was a "scam" to raise money on GoFundMe. (*Id.* ¶¶ 74-76).

On September 1, 2022, Upchurch posted a phone number and address for Daniel Rodni. (*Id.* ¶¶ 85-87). Plaintiffs allege that a result of this video and the ensuing negative attention he received, Daniel Rodni went into hiding and made substantial investments in home security, surveillance, and cameras. (*Id.* ¶ 90). On September 3, 2022, Upchurch posted a video stating that "Kiely Rodni is not Kiely Rodni. Kiely Rodni is Callie Ross. Callie's Ross's dad is fake Kiely Rodni's grandpa…". (*Id.* ¶ 91). On that same date, Upchurch posted a video stating "I would not say this unless I was 100% confident. Kiely Rodni is not real. Her grandfather is not real. Her dad is not real. Her mom is not real…All the pictures and videos you're seeing of this Kiely Rodni person are actual pictures and videos from someone else named Callie, that are five to seven years old." (*Id.* ¶ 97).

On October 13, 2022, news outlets reported the results of the coroner's Final Report of Investigation into Kiely Rodni's death, which concluded that the manner of death was an accident and the cause of death was drowning. (*Id.* ¶¶ 105-107). On December 22, 2022, Upchurch posted a video stating "[l]et's be honest with ourself [sic], at this point in the video, there is nothing to lead me to believe that this person is real. The Kiely Rodni person. There is nothing that shows me she's real yet." (*Id.* ¶ 113). In response to a comment to this video, Upchurch commented "I'm making an insane amount of money…I'm a good guy and im [sic] rich. Fighting evil that is rich. Cause that's what I do." (*Id.* ¶ 117).

After this lawsuit was filed, Upchurch posted a message on YouTube stating "I'm not at all sorry for anything I've ever said on the internet. At all. What so ever. And never will be. Period. That's all i [sic] wanted to say lol." (*Id.* ¶ 122). Plaintiffs bring claims against Upchurch for defamation, defamation per se, intentional infliction of emotional distress, negligent infliction of emotional distress, and false light invasion of privacy. (*Id.* ¶¶ 123-163). Plaintiffs allege that they have both received therapy for psychological injuries attributable to Upchurch's social media posts. (*Id.* ¶ 133).

On October 10, 2023, Upchurch filed the pending motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. No. 22).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

### III.     ANALYSIS

**A. Choice of Law**

Upchurch contends that Tennessee law should govern this action because it has a more significant relationship than California. In support of his argument, Upchurch asserts that Tennessee law does not recognize defamation per se and has a statutory cap on damages recoverable in civil actions. (Doc. No. 23 at PageID # 167). In response, Plaintiffs argue that California law should apply because it has the most significant relationship to this action. Plaintiffs also argue that "there is no permissible inquiry as to whether applying one state's law over another's results in a more favorable outcome to either party." (Doc. No. 30 at PageID # 220).

When determining choice-of-law questions, Tennessee follows the "most significant relationship" approach, which applies "the law of the state where the injury occurred…unless some other state has a more significant relationship to the litigation." *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). "[G]enerally the law of the state where the injury occurred will have the most significant relationship to the litigation." *Id.*

Here, Plaintiffs are domiciled in California, were injured in California, received treatment for their injuries in California, and Upchurch's social media posts were published in California. Accordingly, the Court finds that California law should govern this action.

4

**B. First Amendment**

  1. <u>Actual Malice v. Negligence</u>

  It appears both parties agree that Plaintiffs are private figures and that the standard under California law for a private figure to succeed on a defamation claim is negligence rather than actual malice. (Doc. Nos. 23 at PageID # 170, 30 at PageID # 222). *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 15 (1990) (internal citations omitted) (the "*New York Times* malice standard was inappropriate for a private person attempting to prove he was defamed on matters of public interest"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (U.S. 1974) ("Private individuals are…more vulnerable to injury, and the state interest in protecting them is correspondingly greater."). California permits defamation liability if it is consistent with the requirements of the United States Constitution. *Brown v. Kelly Broad. Co.*, 771 P.2d 406, 425 (Cal. 1989) ("We see no reason to deny California citizens protection for their reputations equal to that provided in other states. We decline to diverge from the near unanimous authority that a private person need prove only negligence (rather than malice) to recover for defamation."). Accordingly, the negligence standard applies to Plaintiffs' defamation claims.

  2. <u>Opinion Speech</u>

  The Supreme Court has refused "to create a wholesale defamation exemption for anything that might be labeled 'opinion'" and "recognized that 'expressions of 'opinion' may often imply an assertion of objective fact.'" *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 516 (1991), cleaned up. In *Milkovich v. Lorain Journal Co.*, the Supreme Court rejected a categorical First Amendment protection for "opinion" speech, holding that "we are not persuaded that… an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." 497 U.S. at 21. Instead, "the analysis under the First Amendment is not simply the characterization of statements as fact or opinion, but whether

5

the statements reasonably imply false and defamatory facts." *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 979 (N.D. Ohio 2003) (internal citation omitted). Further, as Plaintiffs correctly point out, the Sixth Circuit has "interpreted *Milkovich* to stand for the proposition that 'a viable defamation claim exists…where a reasonable factfinder could conclude that the challenged statement connotes actual, objectively verifiable facts.'" *Sandmann v. New York Times Company*, 78 F.4th 319, 332 (6th Cir. 2023) (internal citation omitted).[1]

The Sixth Circuit considers the following four factors when determining whether a statement can carry a defamatory meaning: "(1) the common usage or meaning of the allegedly defamatory words themselves, whether they are commonly understood to be loose, figurative, or hyperbolic words; (2) The degree to which the statements are verifiable, whether the statement is objectively capable of proof or disproof; (3) The immediate context in which the statement occurs; and (4) The broader social context into which the statement fits." *Jolliff v. N.L.R.B.*, 513 F.3d 600, 612 (6th Cir. 2008). Similarly, the Ninth Circuit considers "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (internal citation omitted). Further, the Ninth Circuit has recognized that "[t]he context of a statement may control whether words were understood in a defamatory sense" and that the broad context includes "'the general tenor of the entire work, the subject of the statements, the setting, and the format of the work.'" *Id.* (internal citations omitted).

---

[1] Similarly, the Ninth Circuit recognizes that "the threshold question in every defamation suit is 'whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact.'" *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (internal citation omitted).

Upchurch argues that his statements are opinions and protected by the First Amendment. (Doc. No. 23 at PageID # 170). Upchurch contends that the specific language and the context demonstrate that the statements were opinions. Upchurch also alleges that he made the statements without personal knowledge and formed his opinions based on reports, statements, photographs, interviews, and information that he disclosed to his audience. (Doc. No. 23 at PageID # 175). Upchurch argues that "[v]iewers are certainly not led to think that Mr. Upchurch is presenting objective assertion of facts rather than his opinion on facts that they have an equal opportunity to analyze." (*Id.* at PageID # 176).

In response, Plaintiffs argue that Upchurch's statements may be proven false by objective evidence. In support of this argument, Plaintiffs point to Upchurch's statement that "I would not say this unless I was 100% confident. Kiley Rodni is not real. Her grandfather is not real. Her dad is not real. Her mom is not real…All the pictures and videos you're seeing of this Kiely Rodni person are actual pictures and videos from someone else named Callie, that are five to seven years old… I'm about to post the proof and show you guys." (Doc. No. 30 at PageID # 226). Plaintiffs contend that Upchurch made a false factual assertion that Plaintiffs are not real people and failed to use qualifying or cautionary language. Plaintiffs further point out that, in addition to accusing Plaintiffs of not being who they claim to be, Upchurch asserted that Plaintiffs were relatives of a woman named Callie Ross, that Kiely Rodni was fake, and that the investigating police department was a fake police department. (Doc. No. 30 at PageID # 227). Plaintiffs also contend that Upchurch represented that Kiely Rodni's death was a scam to make money via the related GoFundMe website set up for her family.

Taking the allegations in the First Amended Complaint as true, the Court finds that Upchurch's statements were expressed in terms of absolute certainty and are objectively capable of being proven false. The context surrounding the statements also demonstrates that the

statements were not merely opinions, as Upchurch contends, because Upchurch had previously stated that Kiely Rodni was real, that she had died, and that further online posting related to Kiely Rodni could traumatize her family. (Doc. No. 30 at PageID # 217). Accordingly, the Court finds that, taking the allegations in the First Amended Complaint as true, Upchurch's statements are sufficient to state a claim for defamation.[2]

   3. <u>Whether the Statements are Of or Concerning Plaintiffs</u>

Upchurch also argues that the majority of the alleged defamatory statements aren't of and concerning the Plaintiffs. Upchurch contends that the "GoFundMe 'scam' comments" are not targeted at Plaintiffs. (Doc. No. 23 at PageID # 184). In response, Plaintiffs argue that Upchurch's GoFundMe comments refer to the Plaintiffs by implication. (Doc. No. 30 at PageID # 230). Specifically, Plaintiffs state that the Complaint alleges that the GoFundMe was titled "Support for the Family of Kiely Rodni" and that Plaintiffs are members of Kiely Rodni's family. (*Id.* at PageID # 230 – 231).

The First Amendment requires that statements upon which a defamation claim is based "must specifically refer to or be 'of and concerning' the plaintiff in some way." *Blatty v. New York Times Co.*, 728 P.2d 1177, 1182 (Cal. 1986). However, under California law, defamatory statements directed toward a discrete group of people are sufficient to state a claim for defamation where the group is sufficiently small. *Mullins v. Brando*, 91 Cal. Rptr. 796, 805 (Cal. App. 1970) (internal citation omitted). The California Court of Appeals has recognized that a family constitutes a sufficiently small group. *Id.* (internal citation omitted).

The Court agrees with Plaintiffs that Upchurch's comments regarding the GoFundMe, which was established for Kiely Rodni's family, concern Plaintiffs as members of her family.

---

[2] The Court finds that under both Sixth Circuit and Ninth Circuit law, Upchurch's statements as alleged in the First Amended Complaint are sufficient to state a claim upon which relief may be granted.

Accordingly, taking the allegations in the First Amended Complaint as true, the Court finds that Plaintiffs have pled facts sufficient to state a claim for defamation.

4. Defamation Per Se

Plaintiffs bring a claim against Upchurch for defamation per se in violation of California Civil Code § 46. "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which: … charges any person with crime, or with having been indicted, convicted, or punished for crime." California Civil Code § 46.

Plaintiffs allege that Upchurch's statements accusing them of participating in a GoFundMe scam falsely accuse them of committing acts of moral turpitude, including fraud. (Doc. No. 9 at PageID # 118). Upchurch argues that Plaintiffs' defamation per se claim should be dismissed because the allegations in the First Amended Complaint do not support that he accused Plaintiffs of crimes of moral turpitude. Upchurch again argues that the statements related to the GoFundMe are not "of and concerning" Plaintiffs and that Plaintiffs do not set out any instances of Upchurch alleging that Plaintiffs themselves were involved in any scam or fraud. (Doc. No. 23 at PageID # 186).

Here, Plaintiffs allege that Upchurch made a social media post that "[t]he only crime that is going on is… a scam to get GoFundMe money…". (Doc. No. 9 at PageID # 101). Plaintiffs also contend that Upchurch suggested the Kiely Rodni case was a scam to raise money through GoFundMe and stated "Do you realize that you can be a millionaire on GoFundMe by catfishing people with internet deaths?...Look at the Kiely Rodni GoFundMe. It's made $63,000 in the past seven days. That's one GoFundMe for Kiely Rodni…It's free money that gets the heat off of you because everybody's looking for a …person that you made up because, why, because you pushed a car in the lake?" (Doc. No. 9 at PageD # 104-105).

The Court finds that, taking the allegations in the First Amended Complaint as true, Plaintiffs have stated facts sufficient to state a claim for defamation per se under California law.

### C. False Light Invasion of Privacy, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress

Upchurch largely argues for dismissal of Plaintiffs' claims for false light invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress on the same basis as his argument for dismissing the defamation claims. Upchurch also attacks these claims as redundant. In response, Plaintiffs contend that California law permits false light invasion of privacy claims to be brought in tandem with defamation claims even though the false light claim could be superflous, and such clams will proceed in lockstep with each other. (Doc. No. 30 at PageID # 237; *Jackson v. Mayweather*, 217 Cal.Rptr.3d 234, 257-58 (Cal. App. 2017) (internal citation omitted)).

Accepting the allegations in the First Amended Complaint as true, the Court finds that Plaintiffs have pled facts sufficient to state a claim upon which relief may be granted. Accordingly, Upchurch's motion to dismiss Plaintiffs' claims for false light invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress is denied.

## IV. CONCLUSION

For the reasons stated above, Upchurch's motion to dismiss (Doc. No. 22) will be **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE