# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DAVID ROBERTSON, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **NO. 3:23-cv-00770** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **RYAN UPCHURCH,** | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Pretrial Brief Re: Private Figure Status of Plaintiffs Robertson and Rodni. (Doc. No. 80). Defendant filed a response (Doc. No. 84), and Plaintiffs filed a reply (Doc. No. 89). For the reasons discussed below, the Court finds that Plaintiffs are private figures and accordingly, actual malice need not be proved on Plaintiffs' defamation claims.

## I.      STANDARD OF REVIEW

"In a claim for defamation, a plaintiff who is a public figure can prevail only by showing that the defendant acted with actual malice" while "a plaintiff who is a private figure need show only negligence on the part of the defendant." *Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015). In *Gertz v. Robert Welch, Inc.*, the Supreme Court recognized that "absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life" and "it is preferable to reduce the public figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." 418 U.S. 323, 352 (1974). Moreover, the Sixth Circuit has recognized that "[a] limited-purpose public figure is a public figure with respect to a limited range of issues, and one

achieves that status by voluntarily injecting himself … into a particular public controversy." *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014) (citation modified).

To determine whether a plaintiff is a limited purpose public figure, the Court applies a two-pronged analysis: "First, a public controversy must exist. Second, the nature and extent of the individual's involvement in the controversy must be ascertained, so that the court can determine whether the plaintiff voluntarily injected itself into the particular public controversy giving rise to the alleged defamation." *Id.* at 529 (citation modified). Moreover, the Sixth Circuit has recognized that "[i]n analyzing whether a public controversy exists, we are mindful that all controversies of interest to the public are not public controversies within the meaning of *Gertz*. Rather, a 'public controversy' is a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way. It is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants. Most importantly, the court must isolate the specific public controversy related to the defamatory remarks." *Id.* at 530 (citation modified).

When considering whether a plaintiff voluntarily injected itself into a public controversy giving rise to the alleged defamation, the court considers three factors: "first, the extent to which participation in the controversy is voluntary; second, the extent to which there is access to channels of effective communication in order to counteract false statements; and third, the prominence of the role played in the public controversy." *Id.*

## II.    ANALYSIS

Plaintiffs contend that they are private figures, not limited purpose public figures, because: Defendant's alleged defamatory statements were a separate controversy from Kiely Rodni's initial

disappearance and investigation; Plaintiffs did not voluntarily insert themselves into the controversy of Defendant's alleged defamatory statements; Defendant's statements cannot make Plaintiffs limited purpose public figures; and Plaintiffs lacked meaningful access to effective channels of communication when the statements were made. (Doc. Nos. 80 at 4-8).

Plaintiffs point to *Jones v. Pozner*, a case from the Court of Appeals of Texas, as analogous to the present case. (*See* Doc. No. 80 (citing *Jones v. Pozner*, Case No. 03-18-00603-CV, 2019 WL 5700903 (Tex. App. Nov. 5, 2019)). In that case, the parents of a child who was killed in the Sandy Hook Elementary School shooting sued Alex Jones for defamation based on broadcasted statements disputing whether the shooting actually occurred, and whether, if the children were killed, they were shot as part of a staged event. *Id*. at \*1. The Texas court considered whether the alleged defamatory statements created a controversy separate from the shooting itself. In that case, the defendant argued the parents were public figures based on later-made public statements on gun control and founding a charity that provides resources to combat online harassment of victims of shootings by individuals who think that the events were staged. The Court found that the controversy was whether the parents and other individuals were somehow involved in staging the Sandy Hook shooting and held that, notwithstanding Plaintiff's public comment on other issues, "[the plaintiff] nonetheless remained a private individual for purposes of the debate about whether the Sandy Hook shooting was staged." *Id.* at \*8.

Plaintiffs in this case argue that, as in *Jones*, the relevant public controversy is not the investigation into Kiely Rodni's disappearance, but the hoax accusations made by Defendant. (Doc. No. 80 at 4). They argue that by the time Defendant made the statements at issue, Kiely Rodni had been found, and the media attention had largely dissipated. (*Id*.). They contend Defendant's statements created a new public controversy separate from the initial public interest

3

into the disappearance and, like the plaintiffs in *Jones*, they remained private figures notwithstanding Defendant's drawing public attention to them through his hoax accusations. (*Id.*).

Defendant contends that Plaintiffs are limited purpose public figures because the alleged defamatory statements relate to a public controversy concerning what happened to Kiely Rodni, Plaintiffs voluntarily thrust themselves into the controversy by their own actions of calling for help from the public, and they had access to channels of communication to rebut false statements. Defendant also contends that the *Jones* decision is distinguishable from the present case because law enforcement in that case "knew immediately 'what happened,' there was no controversy over what might have happened, or who might have been involved, or why," whereas the statements in the present case "are not about a wholly separate subject from the existing debate" because they "go directly to the very controversy the Plaintiffs were publicly addressing – what happened to Kiely Rodni, what were the circumstances surrounding her suspicious disappearance, who may been involved, and why." (Doc. No. 84 at 6-7). Therefore, according to Defendant, when he made the statements at issue, Plaintiffs were limited purpose public figures whose status "had been assumed and applied to the continuing controversy." (*Id.* at 10).

Plaintiffs argue in their reply that they did not have regular, actual access to channels of communication at the time Defendant's statements were made and that Defendant's argument to the contrary is theoretical and speculative. (Doc. No. 89 at 2). Plaintiffs note that Plaintiff Robertson has "three or four" social media followers compared to the roughly three million subscribers of Defendant and that Defendant does not identify any evidence that Plaintiffs had regular and continuing access to the media. (*Id.* at 2-3).

Plaintiffs also argue that Defendant has inaccurately defined the public controversy as, "What happened to Kiely Rodni?" to encompass his hoax accusation as contributing to debate on

4

that question. Plaintiffs contend that public attention from the investigation itself is distinct from the later-arising controversy surrounding the hoax accusation and that Defendant cannot manufacture public-figure status through his own defamatory statements. (*Id*. at 3-4).

Plaintiffs further argue that they did not voluntarily inject themselves into the hoax controversy and their association with a tragic newsworthy event is not a "voluntary act aimed at influencing the resolution of the public issue at hand" and is, therefore, insufficient to confer public-figure status. (Doc. No. 89 at 5).

As an initial matter, Plaintiffs correctly point out that not all matters of interest to the public are public controversies. The Supreme Court addressed this distinction in *Time, Inc. v. Firestone*, 424 U.S. 448, 454-55 (1976):

> Petitioner contends that because the Firestone divorce was characterized by the Florida Supreme Court as a 'cause celebre,' it must have been a public controversy and respondent must be considered a public figure. But in so doing petitioner seeks to equate 'public controversy' with all controversies of interest to the public… Dissolution of a marriage through judicial proceedings is not the sort of 'public controversy' referred to in *Gertz*, even though the marital difficulties of extremely wealthy individuals may be of interest to some portion of the reading public. Nor did respondent freely choose to publicize issues as to the propriety of her married life. She was compelled to go to court by the State in order to obtain legal release from the bonds of matrimony.

*See also*, *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 167 (1979) ("A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention").

Here, Plaintiffs' media presence during the investigation into Kiely Rodni's disappearance, their efforts to locate their missing family member, and their requests for the public's help with the investigation do not constitute a "voluntary act aimed at influencing the resolution of the public issue" or a voluntary choice to enter a public controversy or seek to shape the controversy. The

5

Court is unpersuaded by Defendant's argument that "Plaintiffs chose to take the affirmative and voluntary actions that connect them to the public controversy" because "[t]hey actively engaged with the media calling for help from the public, asking for any information, issued and participated in public statements, used social media to seek support, and otherwise inserted themselves into the public discussion." The Court finds it worth noting that Plaintiffs did not choose the events – namely, the disappearance and death of their family member – leading up to their media presence. The Court declines to hold that Plaintiffs' media participation and efforts in attempting to locate Kiely Rodni are sufficient to demonstrate that they voluntarily inserted themselves into a public controversy such that they should be recognized as limited purpose public figures. Instead, as Kiely Rodni's family members, Plaintiffs likely felt compelled to participate in the investigation surrounding her disappearance and to make media appearances to request help from the community for the purpose of finding their missing family member. The Court finds that Plaintiffs' participation in the investigation and efforts to locate their missing daughter and granddaughter are not the type of voluntary act to influence resolution of a "public controversy" set forth in *Gertz*. Moreover, the Court finds Defendant failed to show that Plaintiffs had regular and continuing access to channels of effective communication.

As Plaintiffs did not voluntarily inject themselves into a public controversy and there is no evidence sufficient to show that Plaintiffs had continuing access to effective channels of communication to counteract Defendant's statements, the Court finds Plaintiffs are not limited purpose public figures.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs will be treated as private figure plaintiffs and as such, actual malice need not be proved on Plaintiffs' defamation claims.

In light of the foregoing, the hearing scheduled for May 11, 2026, at 2:00 p.m. is **CANCELLED**. Plaintiffs' motion for leave to present live testimony at the May 11, 2026 hearing on private-figure status (Doc. No. 100) is **DENIED** as moot.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

7