**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| DAVID ROBERTSON and DANIEL RODNI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:23-cv-00770 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| RYAN UPCHURCH, HOLMES | ) | MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b), OR, IN THE ALTERNATIVE, FOR A NEW TRIAL OR REMITTITUR PURSUANT TO FED. R. CIV. P. 59

Defendant Ryan Upchurch, by and through undersigned counsel, respectfully moves this Court, pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure, to set aside the Judgment entered on May 20, 2026 (Doc. 116) and to enter judgment in Defendant's favor as a matter of law on Plaintiffs' claims for defamation per se and intentional infliction of emotional distress. In the alternative, Defendant moves for a new trial or, at minimum, a substantial remittitur of the jury's $17,500,000 compensatory award and $500,000 punitive award.

Defendant moved for judgment as a matter of law under Rule 50(a) at the close of Plaintiffs' proof and renewed that motion at the close of all the evidence. The grounds asserted then—that Plaintiffs failed to prove falsity, that the statements were privileged commentary on a matter of public concern, that the statements were not "of and concerning" Plaintiffs, and that the intentional-infliction claim failed for want of outrageous conduct, intent, and causation—are reasserted and preserved here. Defendant also timely objected, at the charge conference and when the evidence was offered, to the form and content of the jury instructions and verdict form and to

the admission of videos and comments beyond the four statements pleaded as defamatory; those objections are likewise preserved. As set forth in the accompanying Memorandum of Law, no legally sufficient evidentiary basis exists for a reasonable jury to have found for Plaintiffs on either claim, and the verdict and resulting damages cannot stand.

In support of this Motion, Defendant relies upon the accompanying Memorandum of Law, the trial record, the jury's Verdict (Doc. 112), the Judgment (Doc. 116), and all pleadings and papers on file in this action.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

## I. INTRODUCTION

This case asked a jury to decide whether an ordinary citizen can be made to pay millions of dollars—years later—because he opened a camera, joined a livestream, and added his voice to a worldwide conversation about a missing teenager. The disappearance and death of sixteen-year-old Kiely Rodni near Truckee, California, was, by Plaintiffs' own admission in their pleadings, "international news": more than sixteen agencies and some 19,000 man-hours were devoted to the search, national outlets covered the story, and an entire ecosystem of online "true-crime" creators generated millions of views speculating about what had happened. Defendant Ryan Upchurch was one voice among countless others in that storm—and the only one Plaintiffs sued.

The jury nonetheless returned a combined $17.5 million compensatory verdict and $500,000 in punitive damages against Defendant for his commentary. That result cannot be reconciled with the trial record or with the constitutional limits on tort liability for speech, and the Court should set it aside. The four statements Plaintiffs submitted concerned "Kiely Rodni" (who is deceased and cannot be defamed), and other third party generic references, including "Callie Ross," a GoFundMe campaign neither Plaintiff created or benefited from, and unnamed references to "the dad," "the grandpa," and "the family." The videos never named David Robertson or Daniel Rodni. The statements were loose, hyperbolic, profanity-laced opinion and speculation about a public controversy, not provably false assertions of fact of and concerning these two men. There was no clear and convincing evidence of actual malice, which is required before presumed and punitive damages may be imposed in a public-concern defamation case involving a private plaintiff. And the intentional-infliction claim was an impermissible effort to recover, under a

different label, for the very speech the First Amendment protects. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50 (1974); *Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 755-56 (1985)

The Court instructed the jury to "[c]ompensate only proven harm," to confine the defamation claim to the four statements, and to evaluate each Plaintiff's claim separately. Measured against those instructions and the constitutional standards, the proof was legally insufficient on element after element. Defendant is entitled to judgment as a matter of law on both claims. Independently, three trial errors require a new trial under Rule 59: the jury instructions did not track the governing California pattern instructions and allowed the jury to bypass the required elements; the Court admitted a body of videos and comments well beyond the four pleaded statements, which were cumulative and unfairly prejudicial; and the damages—which improperly stack three separate awards for the same harm and appear to rest on the size of Defendant's audience rather than any proven injury—are grossly excessive. Together these errors permitted a verdict driven by emotion rather than by the elements and the proof.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs are the grandfather (David Robertson) and father (Daniel Rodni) of Kiely Rodni, whose August 2022 disappearance in Northern California prompted extensive national coverage, a large-scale multi-agency search, and intense public discussion online. By the time Defendant first commented on the case on August 13, 2022, the story was already saturating national media and an online "true-crime" community that included creators such as iCkEdMeL (Melvin Cedeno), XanamayX (Anastasia Maynich), An All American Cartel (Julio Jacquez-Hawkes), "J-Rod on Point," Zav Girl, Christina Randall, and many others, several of whom advanced theories far more inflammatory than anything Defendant said. None of them was sued.

The evidence further showed that Defendant publicly offered a reward of a Dodge Challenger Hellcat for information leading to finding Kiely; that when an amateur dive team recovered her car and body he made good on the pledge, giving the vehicle to its team leader and donating another $100,000 to the recovery organization; that he led a prayer for Kiely and her family on a livestream the day her body was recovered; that his YouTube channel was never monetized and produced no advertising revenue from any video about Kiely Rodni; and that he had no relationship of any kind with either Plaintiff and had never met them before this litigation.

Plaintiffs limited their defamation and defamation per se claims to four statements: (1) that "the only crime that is going on . . . [is] a scam to get GoFundMe money"; (2) that one "can be a millionaire on GoFundMe by catfishing people with internet deaths," referencing the Kiely Rodni GoFundMe; (3) that "Callie Ross' dad is fake Kiely Rodni's grandpa"; and (4) that "Kiely Rodni's grandfather is not real. Her dad is not real." The Court determined that Plaintiffs are private figures and that California substantive law governs the defamation claim. The intentional-infliction claim, by Plaintiffs' own description in closing, was not limited to those four statements but reached "every video, every post." Under California law, a Plaintiffs must still establish that the challenged statement(s) was "of and concerning" them, that they were false, and that any damage recoverable for speech on matters of public concern are subject to constitutional limits. *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042-46 (1986); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986)

Defendant moved for judgment as a matter of law under Rule 50(a) at the close of Plaintiffs' proof and renewed the motion at the close of all the evidence, in each instance pressing the absence of evidence that the statements were of and concerning Plaintiffs and the absence of

the requisite fault, outrageousness, intent, causation, and harm. The Court denied the motions and submitted the case to the jury.

The jury found Defendant liable to both Plaintiffs on both claims. For Daniel Rodni it awarded $500,000 in actual defamation damages, $2,000,000 in assumed defamation damages, and $4,000,000 in IIED damages—$6,500,000 in all. For David Robertson it awarded $1,000,000 in actual defamation damages, $4,000,000 in assumed defamation damages, and $6,000,000 in IIED damages—$11,000,000 in all. The jury also found each Plaintiff entitled to punitive damages, and the Court entered judgment that included $250,000 in punitive damages for each Plaintiff. (Doc. 112; Doc. 116.) This timely motion follows.

## III. LEGAL STANDARD

Under Rule 50(b), judgment as a matter of law is warranted where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1), (b). The standard mirrors that for summary judgment: the court asks whether the evidence, viewed in the light most favorable to the nonmovant, is such that a reasonable jury could find in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). A "mere scintilla" of evidence will not do; there must be evidence on which the jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Because this case imposes liability for speech on a matter of public concern, an additional, constitutionally mandated layer of review applies. The court must "make an independent examination of the whole record" to ensure that the judgment does not constitute a forbidden intrusion on the field of free expression, *New York Times Co. v. Sullivan*, 376 U.S. 254, 284–86 (1964); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984), and constitutional

facts, including falsity and actual malice, must be supported by clear and convincing evidence. *Anderson*, 477 U.S. at 254–56. That heightened standard governs the Rule 50 inquiry here.

In the alternative, Rule 59(a) authorizes a new trial where the verdict is against the clear weight of the evidence, where the damages are excessive, or where a new trial is necessary to prevent a miscarriage of justice; and where an award is excessive, the court may order a remittitur in lieu of a new trial.

## IV. ARGUMENT

### A. No Legally Sufficient Evidence Established That the Statements Were "Of and Concerning" Either Plaintiff.

A threshold, indispensable element of any defamation claim is that the challenged statement be "of and concerning" the plaintiff, meaning that a reasonable recipient would understand the statement to refer to that plaintiff specifically. *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042–46 (1986) (the requirement is constitutionally compelled and applies to all injurious-falsehood claims). Plaintiffs failed to carry that burden as to either man, and the failure is fatal to the defamation claims of both.

The record establishes, without contradiction, that none of the challenged videos named David Robertson or Daniel Rodni. The statements referred instead to "Kiely Rodni," to "Callie Ross," to an air-quoted "grandpa," to "the dad," and to "the family." Plaintiffs offered no witness who testified that he or she understood any of the four statements to refer to David Robertson or Daniel Rodni in particular, rather than to the deceased Kiely Rodni, to Callie Ross, or to a generic reference. A living relative cannot recover for defamation of a deceased person merely because the statement concerns the decedent; the Plaintiffs still must show the statements were independently of and concerning each of them. *Id.;* Restatement (Second) of Torts § 560-562.

Therefore, statements that "Kiely Rodni" is "not real" are not actionable by her father and grandfather unless independently of and concerning them.

The two GoFundMe statements illustrate the defect starkly, because Plaintiffs' own testimony negated reference to them. The campaign was created by a third party whom Plaintiffs testified they did not even know; its sole beneficiary was Lindsey Rodni-Nieman, who is not a party; and neither Plaintiff created, controlled, or received money from it. Mr. Robertson testified that he "wasn't interested in any of that money," that the beneficiary was "Lindsey Nieman, my daughter," and, when asked directly whether the GoFundMe statements were about him, answered, "Not according to him." He further testified that when Lindsey "asked Dan if he wanted money out of it," Mr. Rodni "said no." On that record, no reasonable listener could have understood a statement about a "scam to get GoFundMe money" to be "of and concerning" two men who did not run the campaign, were not its beneficiaries, and disclaimed its proceeds.

The Court's small-group instruction that "a family constitutes a sufficiently small group" does not fill the evidentiary void; group-defamation principles do not dispense with the requirement that the statements reasonably be understood to refer to individual plaintiffs. Group-defamation principles permit an inference of reference only where the defamatory sting actually attaches to each member; they do not manufacture identification where the speech concerned a deceased individual and an unrelated third party, where the statements did not name Plaintiffs, and where no recipient testified to understanding the statements as referring to these Plaintiffs. See *Blatty*. On this record, no reasonable jury could find the "of and concerning" element satisfied, and the defamation claims fail as a matter of law.

### B. The Challenged Statements Are Constitutionally Protected Opinion and Hyperbole on a Matter of Public Concern, Not Provably False Statements of Fact.

Even setting the identification defect aside, the statements are not actionable because they are not provably false assertions of fact. The First Amendment protects statements that cannot "reasonably [be] interpreted as stating actual facts" about an individual, including rhetorical hyperbole, figurative language, and opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988). Whether a statement is one of fact or protected opinion is a question of law for the court, and the inquiry turns on the broad context, the medium, and the manner of the speech.

Each contextual signal here points to protected opinion. The statements were delivered in real time, in the profane and hyperbolic vernacular of the YouTube true-crime community, framed with the classic markers of opinion and conjecture: "I think," "isn't it possible," "show me," "why would," and "it's bullshit." The "scam" and "catfishing" comments employ loose, colloquial words that ordinary listeners apply to used-car lots, infomercials, and political fundraising, not falsifiable assertions about a specific transaction by either Plaintiff. The "grandpa" statement was delivered with literal air quotes, reacting on screen to a screenshot another creator (XanamayX, who appeared on Plaintiffs' own witness list) had injected into the public conversation. And the "not real" statement, prefaced by "I would not say this unless I was 100 percent confident," was not a verifiable claim that the man in the courtroom is an impostor; confidence in an opinion is not a fact, and Defendant explained under oath that, in his regional vernacular, a person one cannot see or speak with is not "real" to the speaker in the same way. No reasonable viewer in that medium would take such commentary as a sworn report of fact. Indeed, Mr. Robertson himself adopted the same rough idiom, conceding he had called Defendant a "cornbread terrorist"—confirming that no participant in this space applied the literal, factual reading Plaintiffs now urge.

The subject matter compounds the constitutional protection. The disappearance and death of Kiely Rodni was a quintessential matter of public concern. Speech on such matters occupies "the highest rung of the hierarchy of First Amendment values" and receives special protection, *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011), and Plaintiffs—not Defendant—bore the burden of proving falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776–77 (1986).

Plaintiffs did not carry that burden. The evidence showed that Defendant's commentary was grounded in publicly available material that he displayed on camera as he reasoned: the coroner's report (which listed drowning yet, as Defendant and many others observed, reflected facial inconsistencies and a "Pending Investigation" notation); the recovery of Kiely's car by an amateur dive team within roughly 72 hours, in an area already searched; the on-camera statement by the diver, Plaintiffs' own witness, that "it looks suspicious"; and the public accounts of Kiely's friends. Whatever one thinks of Defendant's conclusions, opinion and conjecture drawn from disclosed public facts are not actionable.

**C. There Was No Clear and Convincing Evidence of Actual Malice to Support the Presumed and Punitive Damages That Comprise the Bulk of the Award.**

The greater part of the compensatory award rests on "assumed" (presumed) defamation damages—$2,000,000 for Rodni and $4,000,000 for Robertson—and the jury further awarded punitive damages. In a defamation case involving a private plaintiff and speech on a matter of public concern, presumed and punitive damages require proof of actual malice by clear and convincing evidence. Actual malice means knowledge of falsity or reckless disregard for the truth, and Reckless disregard requires evidence that the speaker "in fact entertained serious doubts as to the truth" of the statement. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50 (1974); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 755–56 (1985); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The Court's assumed-damages instruction embodied this requirement,

permitting presumed damages only on "clear and convincing evidence that Mr. Upchurch knew the statements were false and that he had serious doubts about the truth of the statements."

The record contains no legally sufficient evidence to meet that demanding standard. The evidence showed the opposite of subjective doubt: Defendant reacted in real time to publicly available material—other creators' screenshots, news conferences, and the coroner's report—and stated he was "100 percent confident" in what he said. A belief that was mistaken, or even unreasonable, is not the subjective awareness of probable falsity that actual malice requires. Tellingly, the single most inflammatory accusation Plaintiffs pressed, that Defendant supposedly said Mr. Robertson "killed Kiely," was a rumor relayed to Mr. Robertson by Plaintiffs' own private investigator; Mr. Robertson admitted under oath that he never saw any such video and that it was never produced because no such video exists. Plaintiffs cannot establish clear-and-convincing knowledge of falsity from a statement Defendant never made.

The surrounding, undisputed conduct further forecloses any finding of actual malice or of the "malice, oppression, or fraud" required for punitive damages. A man who pledged $100,000 and a vehicle to help find Kiely, paid when she was found, donated the funds to the recovery organization, led a prayer for her family on a livestream, and had no relationship with or animosity toward Plaintiffs did not engage in the type of conduct that would support a punitive-damages award under the Court's instruction. Because no reasonable jury could find actual malice (or malice, oppression, or fraud) by clear and convincing evidence, the presumed-damages and punitive awards cannot stand.

**D. The Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law.**

The IIED award—$4,000,000 for Rodni and $6,000,000 for Robertson—cannot survive for several independent reasons.

First, a plaintiff may not recover for intentional infliction of emotional distress based on speech about a matter of public concern, because allowing such recovery would let plaintiffs evade the constitutional protections that govern defamation. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *Snyder v. Phelps*, 562 U.S. 443, 458–60 (2011). By Plaintiffs' own framing, the IIED claim swept in "every video, every post"—the entire course of Defendant's commentary on a public controversy—inviting multimillion-dollar liability for protected speech under the banner of "outrageousness." *Snyder* forecloses precisely that result.

Second, the conduct was not outrageous as a matter of law. The Court instructed that outrageous conduct must "go beyond ***all*** possible bounds of decency" [emphasis added] and does not include "trivialities such as indignities, annoyances, hurt feelings or bad manners." Crude, profane internet commentary is, at most, the kind of indignity the instruction excludes; it is not conduct that "go[es] beyond all possible bounds of decency" simply because it is offensive. See *Hustler.* The contrast in the record is instructive: a separate, unsued creator (Julio Jacquez-Hawkes) accused the family of running a cult and "sacrificing children"; another YouTube commenter by the name of "J-Rod on Point" appeared on video brandishing a knife and threatening Kiely's mother by name. That Plaintiffs sued Defendant, and not those creators, underscores that Defendant's commentary does not approach the "beyond all bounds" threshold.

Third, Plaintiffs failed to prove the intent element. California's tort requires that the defendant intend to cause the plaintiff emotional distress, or act with reckless disregard of the probability of causing such distress while knowing the plaintiff is present when the conduct occurs. Defendant was alone in a Tennessee studio; both Plaintiffs were some 2,000 miles away in California; and Plaintiffs offered no evidence that Defendant knew either was present or watching. Nor was there evidence of intent to harm two men Defendant had never met, bore no animosity

toward, and as to whom the record shows no motive. Indeed, Defendant testified he understood "the topic [to be] Kiely Rodni," and urged on a livestream that nothing be posted "to make her mom more devastated."

Fourth, the evidence of causation was legally insufficient. The standard is whether Defendant's conduct was a "substantial factor" in causing severe emotional distress, but the record established a multitude of independent causes that cannot be parsed and pinned on Defendant: the profound grief of losing a child and grandchild; saturating national and international coverage; the cult-and-child-sacrifice videos and knife threat by other creators; negative online reviews and a protest at the family lodge by persons unconnected to Defendant; a pre-existing family dispute in which Mr. Robertson's son-in-law accused him of "skimming profits" before Kiely ever disappeared; Mr. Robertson's documented internet "obsession," which his own therapist counseled him to curtail; and Mr. Rodni's documented, longstanding history of depression and cannabis use predating Kiely's death. Any attribution of Plaintiffs' distress specifically to Defendant rested on speculation, not legally sufficient proof.

### E. Daniel Rodni's Claims Fail Independently for Lack of Any Legally Sufficient Proof.

The Court instructed that each Plaintiff must independently prove every element of each claim and that the jury could not lump them together. Measured separately, Mr. Rodni's $6,500,000 award rests on a record that is nearly empty. There is no testimony from any recipient that the statements were understood to refer to Mr. Rodni in particular; on the contrary, the only direct evidence is that Mr. Rodni disclaimed any interest in the GoFundMe. The only medical, therapy, psychiatric, prescription, or clinical record for Mr. Rodni in evidence shows his documented, longstanding history of depression and cannabis use predating Kiely's death. There is no expert testimony, proof the law ordinarily expects, to establish the severe, disabling distress

the instruction requires. There is no witness—no neighbor, client, friend, or community member—who testified to thinking less of Mr. Rodni because of anything Defendant said, and no documentation of any specific economic loss; Plaintiffs disclaimed lost wages and lost earning capacity in discovery. And there is no evidence Defendant ever targeted Mr. Rodni or even knew him as a person distinct from "the dad" mentioned in passing. On this record, no reasonable jury could find for Mr. Rodni on any element of either claim, and judgment as a matter of law should be entered against his claims in their entirety.

### F. The Jury Instructions Did Not Track the Governing California Pattern Instructions and Permitted the Jury To Bypass the Required Elements (Rule 59).

Independent of the sufficiency grounds above, the manner in which the jury was charged requires a new trial under Rule 59. Because California substantive law governs these claims, the Judicial Council of California Civil Jury Instructions (CACI) supply the authoritative statement of the elements the jury was required to find. A new trial is warranted where the instructions, taken as a whole, fail to state the controlling substantive law accurately and adequately and the error is prejudicial; a charge that omits or dilutes an essential element of a state-law claim is not harmless. See Fed. R. Civ. P. 51, 61.

Defendant preserved this issue at the charge conference, objecting that the instructions and the verdict form did not follow the pattern closely enough and warning that the framing would permit the jury to evaluate the case at large rather than confine it to the required elements. As to defamation and defamation per se, Defendant proposed conforming the charge to the CACI pattern by spelling out the operative definition of defamatory meaning—exposure of the plaintiff to hatred, contempt, ridicule, or obloquy, or causing the plaintiff to be shunned or avoided, or charging the plaintiff with a crime—so that the jury would have to find that specific defamatory meaning as to each Plaintiff. Defendant also objected that the verdict form asked only whether Defendant was

"liable . . . for defamation" and "liable . . . for defamation per se" without restating the elements, requiring the jury to shuttle back to the instructions to understand what it was deciding, and proposed restating the elements on the form itself. Defendant further objected that the introductory "substantive law" framing described "numerous YouTube videos containing defamatory statements" at large rather than statements "about" the Plaintiffs, cautioning that this "open[ed] . . . the door" to treating any video as actionable. The Court overruled these objections and submitted an abbreviated charge.

The consequence was prejudicial. With the defamatory-meaning definition compressed and the verdict form stripped of the elements, the jury was free to answer "liable—yes" without separately finding, as the law requires, that a specific, provably false statement of fact was of and concerning each Plaintiff, was understood by recipients to carry a defamatory meaning about that Plaintiff, and was made with the requisite fault. The same dilution affected the intentional-infliction charge, where the line between protected, hyperbolic commentary and conduct "beyond ***all possible*** bounds of decency" [emphasis added] was precisely the issue. Instructions that allow a jury to find liability without marching through each element of each claim—particularly where, as here, the proof on several elements was absent—do not "provide[] a basis in law for the jury to reach its decision," and they invite a verdict driven by sympathy and revulsion rather than by the elements. That is what the record reflects: a $17.5 million award untethered to element-by-element findings. A new trial under a charge that faithfully tracks CACI is required.

### G. The Admission of Videos and Comments Beyond the Four Pleaded Statements Was Cumulative, Outside the Scope of the Pleadings, and Unfairly Prejudicial (Rule 59).

A new trial is also warranted because the Court permitted Plaintiffs to flood the trial with videos and comments far beyond the four statements on which the defamation claim was pleaded

and tried. Plaintiffs' operative complaint grounded their claims on a defined set of statements from a defined period. Over Defendant's objection, however, the Court admitted a much larger universe of later material—including the October 2023 and November 2023 "CGI," "AI," and "bullshit family" comments and, as Plaintiffs put it, "every video, every post," much of it postdating the pleaded period and the filing of suit. This material was cumulative and duplicative of the four statements at issue, was outside the scope of the pleadings, and carried substantial capacity for unfair prejudice that the Court did not cure.

Even relevant evidence must be excluded where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Here the imbalance was stark. The added videos added little or nothing to the four pleaded statements on the questions actually before the jury, but they did a great deal to inflame: they put before the jury hours of Defendant's crudest and most provocative language, much of it having nothing to do with whether the four statements were false, of and concerning Plaintiffs, or made with fault. The predictable effect was to invite the jury to punish Defendant for the entire tenor of his online presence rather than to adjudicate the discrete statements pleaded.

The Court attempted to channel this material with a limiting instruction permitting the jury to consider other statements only insofar as they related to the four at issue. But a limiting instruction cannot unring a bell of this size, and the magnitude and composition of the verdict indicate it did not. The damages awarded—dwarfing anything traceable to the four statements—are explicable only as compensation (or punishment) for the broader course of commentary the jury should never have been steeped in. Admission of this cumulative, out-of-scope, and inflammatory material was prejudicial error warranting a new trial. See Fed. R. Civ. P. 61.


Case 3:23-cv-00770 Document 118 Filed 06/17/26 Page 16 of 20 PageID #: 957

### H. The Damages Are Duplicative, Untethered to Proof, and Grossly Excessive (Rule 59).

Even if any claim survived Rule 50, the damages award cannot stand under Rule 59. As an initial matter, the verdict form permitted—and the jury delivered—separate, stacked awards for the same injury: actual defamation damages, assumed defamation damages, and IIED damages, each compensating overlapping reputational and emotional harm arising from the same conduct. That is impermissible double (indeed triple) recovery. The Court instructed that "each item of damages may be awarded only once," and that if "the same harm" was caused by both defamation and IIED, the jury "must not award separate amounts for the same harm under each legal theory." Plaintiffs' counsel told the jury the same thing: "there is only one recovery." The award, which simply summed three figures per Plaintiff, violates that single-recovery principle on its face.

The award also appears to rest on precisely the basis the Court forbade. The Court limited the defamation claim to the four statements and instructed that evidence of other statements could be considered only as it related to those four. Yet the only way to reach figures of this magnitude is to compensate Plaintiffs for the entire reach of Defendant's channel—the "millions" of views and three-million-subscriber audience that featured so prominently—rather than for any harm traceable to the four statements. A view is not a reader who believed a falsehood, is not reputational injury, and is not a dollar of compensable loss. A verdict built on audience size rather than proven harm reflects passion and prejudice and cannot stand.

The presumed and punitive components are independently defective. Assumed damages require clear-and-convincing actual malice (absent here, see Part IV.C) and, even when available, may be as little as a nominal sum. The instruction's own example is "one dollar." The $2,000,000 and $4,000,000 presumed-damages awards are neither supported by the requisite fault nor tethered to any evidence of actual reputational harm. Plaintiffs produced no witness who testified to

thinking less of either man, and no documentation of out-of-pocket loss. Coupled with Plaintiffs' own statements that this case "was never about money," the size of these awards confirms that the jury was moved to punish protected speech rather than to compensate proven injury. At a minimum, the Court should order a new trial on damages or a remittitur reducing the award to an amount supported by the evidence and consistent with constitutional limits.

## V. CONCLUSION

This was a tragedy in search of someone to blame, and the verdict punished one voice in a worldwide conversation for speech the Constitution protects. For the foregoing reasons, Defendant Ryan Upchurch respectfully requests that the Court grant his Renewed Motion for Judgment as a Matter of Law and enter judgment in his favor on Plaintiffs' claims for defamation per se and intentional infliction of emotional distress, thereby setting aside the Judgment entered May 20, 2026 (Doc. 116). In the alternative, Defendant requests that the Court grant a new trial or order a remittitur of the compensatory and punitive damages awards, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Dennis G. Disney*

Dennis G. Disney, TN BPR No. 041547
Barry Neil Shrum, TN BPR No. 019703
SHRUM DISNEY & ASSOCIATES
54 Music Square E, Suite 350
Nashville, Tennessee 37203
(615) 338-5130
dennis@shrumdisney.com
barry@shrumdisney.com

*Attorneys for Defendant Ryan Upchurch*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2026, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system, which will send notice of such filing to all counsel of record, and by electronic mail to the following:


Christopher W. Smith, Esq.
Law Offices of David Randolph Smith
1913 21st Avenue South
Nashville, TN 37212
csmith@drslawfirm.com
(615) 742-1775

David Randolph Smith, Esq.
Law Offices of David Randolph Smith
1913 21st Avenue South
Nashville, TN 37212
drs@drslawfirm.com
(615) 742-1775

Dominick R. Smith, Esq.
Law Offices of David Randolph Smith
1913 21st Avenue South
Nashville, TN 37212
dom@drslawfirm.com
(615) 742-1775

*Attorneys for Plaintiffs*

/s/ *Dennis G. Disney*
Dennis G. Disney (TN BPR No. 041547)