IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID ROBERTSON, and DANIEL RODNI, | ) | JURY DEMAND |
| Plaintiffs, | ) | Case No. 3:23-cv-00770 |
| v. | ) | Judge: Campbell |
| RYAN UPCHURCH, | ) | Magistrate: Holmes |
| Defendant. | ) | |

**PLAINTIFFS' EXPEDITED MOTION AND MEMORANDUM OF LAW FOR AN ORDER PROHIBITING DEFENDANT FROM THREATENING OR HARASSING PLAINTIFFS' COUNSEL AND THEIR FAMILIES**

Plaintiffs David Robertson and Daniel Rodni move the Court, under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a), for an order prohibiting Defendant Ryan Upchurch from posting or communicating threatening or harassing statements directed at Plaintiffs' counsel and their families. Because Defendant has continued this conduct after receiving written notice of Plaintiffs' concerns, and has announced that more is coming, Plaintiffs ask the Court to consider this motion on an expedited basis.

## I. INTRODUCTION

While his renewed motion for judgment as a matter of law or a new trial (Doc. 118) is pending, Defendant posted a video to his Instagram account[1] addressing Plaintiffs' lead trial counsel by name: "You, Chris Smith. You little bitch. You got it coming to you, motherfucker." He then asked whether counsel was "ready for all this bad luck" that he, his father, and his brother were "finna have." Counsel's father and brothers are also counsel of record for Plaintiffs in this case.

Plaintiffs' counsel wrote to defense counsel the next day and asked, narrowly, that Defendant stop threatening or harassing Plaintiffs' counsel and their families. The letter said expressly that Plaintiffs were not asking Defendant to stop commenting on this case or the verdict. Defense counsel reported that they could not reach Defendant but had forwarded the letter to him. Defendant's response was to post the letter on Instagram and then post again, telling counsel that "God told me to tell you and your family this Chris. You might be scared," that God "is striking down" the "bad guys," that his followers should "watch what I post next," and that "[w]e hear everything you say and see everything you do."

---

1 The video is no longer available on Mr. Upchurch's page. However, as many "fan accounts" routinely repost Mr. Upchurch's posting, a copy of the video is publicly available at this link https://www.instagram.com/reel/DeMJJpPuWKy/?stkn=MWt1ZHl4OWxxd2J4ag%3D%3D and Plaintiffs' counsel has an offline copy that can be filed at the earliest opportunity. (Plaintiffs' counsel is aware of the extraordinary circumstances occurring today, October 8th, 2026, resulting in the closure of the courthouse to the public.)

Plaintiffs do not ask the Court to restrain Defendant's opinions about this case. They ask only for an order that Defendant stop directing threats and harassment at the lawyers who tried it and at their families. Courts have granted that relief, and the First Amendment does not protect the conduct it would reach.

## II. BACKGROUND

### A. The Verdict and the Pending Post-Trial Motion.

After a five-day trial, a unanimous jury found Defendant liable to Plaintiffs for defamation per se and intentional infliction of emotional distress, and found by clear and convincing evidence that he acted with malice, oppression, or fraud toward each Plaintiff. (Verdict Form, Doc. 112.) Judgment was entered on May 20, 2026. (Doc. 116.) Defendant's renewed motion for judgment as a matter of law or, in the alternative, for a new trial or remittitur remains pending. (Doc. 118; *see* Doc. 127.)

Plaintiffs are represented by Christopher Smith, David Randolph Smith, Dominick R. Smith, and David Anthony Smith of DRS Law. David Randolph Smith is Christopher Smith's father; Dominick R. Smith and David Anthony Smith are his brothers. Plaintiffs' counsel have no relationship with Defendant outside this lawsuit.

Defendant has used social media against Plaintiffs' counsel, and in disregard of this Court's orders, before. In November 2025, he posted his entire videotaped deposition to YouTube and clips to Instagram, captioning one clip: "I will always be attorney Chris Smiths [*sic*] biggest loss in his entire career of law." (Doc. 57 at 2.) The Court found that the posting violated the protective order, found that Defendant's representation that he had removed the material was "not accurate," ordered him to

remove it, required his counsel to "personally confirm" compliance and file a notice certifying it, and awarded Plaintiffs $500 in expenses. (Doc. 61 at 6–8, 10–11.) When neither the notice nor the payment was made by the Court's deadlines, the Court ordered Defendant to show cause. (Doc. 81; *see* Doc. 93.)

**B. The October 7, 2026 Video.**

On October 7, 2026, Defendant posted a video to his Instagram account, @ryanupchurch. (Ex. A; Ex. C ¶ 3.) He opened by reminding viewers of an earlier statement: "See, remember a couple months ago when I said no smithin' around? . . . See, the Smithsonian thinks I'm fucking around and I'm not." He then turned to Plaintiffs' lead counsel by name:

> The Smiths got it coming. Yeah, you. You know what I'm talking about. You, Chris Smith. You little bitch. You got it coming to you, motherfucker. You think you fucking don't? Go call Daddy. Go call Daddy. Go call Daddy. See what the fuck happened. Hey, Chris. You ready for all this bad luck you finna have? You ready for all this bad luck your dad's finna have? You ready for all this bad luck your fucking ugly-ass brother's finna have?

(*Id.*) He went on to claim private knowledge of counsel's family ("Your brother's gonna watch us and laugh. Because he knows there's no way I could know that. But I do.") and to insult counsel's father ("He thinks your dad's a fat fucking rat."). (*Id.*)

**C. Plaintiffs' Request That Defendant Stop.**

On October 8, 2026, Plaintiffs' counsel wrote to defense counsel. (Ex. B.) The letter quoted the video and asked for written confirmation, by the following day, that Defendant would (1) remove the October 7 video and any earlier video referring to Plaintiffs' counsel; (2) refrain from threatening or harassing statements directed at

Plaintiffs' counsel, their family members, or DRS Law's staff; (3) refrain from directing or encouraging others to do so; (4) communicate only through counsel; and (5) preserve the relevant evidence. (*Id.*) The letter stated: "To be clear, we are not asking Mr. Upchurch to stop commenting on this case, the verdict, or his disagreement with either. Our request is limited to threats and harassment directed at the people litigating it." (*Id.*) It also asked defense counsel to confer under Local Rule 7.01(a)(1). (*Id.*)

On October 8, defense counsel advised by phone that they had been unable to reach Defendant but had sent him the letter. (Ex. C ¶ 5.)

### D. Defendant Published the Letter and Continued.

Defendant did not respond through counsel. Instead, on October 8, he posted Plaintiffs' letter to his Instagram account. (Ex. C ¶ 6.) On October 8, he also posted another video, again addressed to Plaintiffs' lead counsel and his family. (*Id.* ¶ 7.) The caption reads:

> God told me to tell you and your family this Chris. You might be scared but he's the one who's scaring you. There is nothing I can do about it, he's in Charge.

**ryanupchurch** Info



425 48

**ryanupchurch** God told me to tell you and your family this Chris. You might be scared but he’s the one who’s scaring you. There is nothing I can do about it, he’s in Charge.

(Screenshot above; Ex. C ¶ 7.) In a further caption on the post, Defendant wrote:

> Chris & his family are scared because they know God is on Earth. And he is striking down everyone consumed with the idea that they are allowed use Zues' [*sic*] lightning for themselves that's why things are SHOCKINGLY accurate right now. Now after I post this, watch what I post next, because it will show you the chosen ones are in charge right now. The Titans have all come back to Earth. And they are all over the shoulder of the bad guys. We hear everything you say and see everything you do.

(Screenshot below; Ex. C ¶ 7.)


**ryanupchurch** Chris & his family are scared because they know God is on Earth. And he is striking down everyone consumed with the idea that they are allowed use Zues' lightning for themselves that's why things are SHOCKINGLY accurate right now. Now after I post this, watch what I post next, because it will show you the chosen ones are in charge right now. The Titans have all come back to Earth. And they are all over the shoulder of the bad guys. We hear everything you say and see everything you do. #KINGTRUMP #ALLHISTITANS #HB

## III. LAW AND ARGUMENT

### A. The Court Has Authority to Protect Counsel and These Proceedings from a Party's Intimidation.

Federal courts possess inherent powers "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.* (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). The All Writs Act likewise authorizes the Court to "issue all writs necessary or appropriate in aid of [its] jurisdiction[]," 28 U.S.C. § 1651(a), and that power reaches persons "in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977).

The Sixth Circuit has explained that a court's "inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (citing *Chambers*, 501 U.S. at 43). That power is properly invoked upon "a finding of bad faith or of conduct 'tantamount to bad faith.'" *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (citation omitted). And the Sixth Circuit has identified "[h]arassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts" as "examples of the sorts of

conduct that will support a finding of bad faith or improper purpose." *Id.* at 754. District courts have exercised this authority to enjoin litigants from threatening or harassing their opponents and opposing counsel. As one court put it, "a district court has the inherent power to issue an injunction against litigants who harass their opponents." *Beyond Blond Prods., LLC v. Heldman*, No. 2:20-cv-05581, 2022 WL 2784404, at *4 (C.D. Cal. June 17, 2022) (quoting *Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007)). That power extends to conduct "directly related" to the lawsuit, including conduct "intended to intimidate those who are handling this litigation." *Id.* (quoting *United Artists Corp. v. United Artist Studios LLC*, No. 2:19-cv-00828, 2019 WL 6917918, at *6 (C.D. Cal. Oct. 17, 2019)).

Defendant's conduct is directly related to this case. This case remains pending before the Court on Defendant's own post-trial motion. Defendant's posts single out the lawyer who tried this case against him and that lawyer's father and brothers, who are also counsel of record. Defendant has no connection to any of them other than this lawsuit. And his most recent post followed, and responded to, the letter Plaintiffs' counsel sent in this case, which Defendant himself published. The Court has the authority to act.

**B. Defendant's Posts Are Threats and Harassment, Not Protected Speech.**

"True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. 66, 72 (2023). True threats are "'serious expression[s]' conveying that a speaker means to 'commit an act

of unlawful violence.'" *Id.* at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). "The speaker need not actually intend to carry out the threat"; the prohibition protects people "from the fear of violence" and "from the disruption that fear engenders." *Black*, 538 U.S. at 359–60 (citation omitted). Whether a statement is a threat depends not on "the mental state of the author," but on "what the statement conveys" to the person on the other end. *Counterman*, 600 U.S. at 74 (citation omitted). An online video can carry a threat, and the setting in which it is posted bears on how a reasonable person would receive it. *See United States v. Jeffries*, 692 F.3d 473, 482–83 (6th Cir. 2012) (affirming conviction for threat against Tennessee judge delivered in video posted to YouTube and shared on Facebook), *abrogated on other grounds by Elonis v. United States*, 575 U.S. 723 (2015).

In context, Defendant's posts convey that harm is coming to Plaintiffs' counsel and his family. Defendant told counsel by name that he has "got it coming," that he is not "fucking around," and that counsel, his father, and his brother should be "ready for all this bad luck" they are "finna have." He claimed private knowledge of counsel's family. After receiving Plaintiffs' letter, he told counsel and his family, "You might be scared," declared that God is "striking down" the "bad guys," told his audience to "watch what I post next," and closed: "We hear everything you say and see everything you do." Attributing the coming harm to "bad luck" or to a deity does not change what the message conveys to the person on the other end: that something bad is going to happen to him and his family, and that they are being watched. Courts have treated comparable statements as veiled threats. *See United Artists*, 2019 WL 6917918, at

*8–11 (statements that the target would understand "soon enough," "You've been warned," and "This is just the beginning" were veiled threats supporting injunction).

Defendant also cannot claim he was unaware of how his words would be received. The Supreme Court has held that, in a criminal prosecution, the State must show that the speaker "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman*, 600 U.S. at 69. Plaintiffs need not prove a crime to obtain the relief requested here, but the record would satisfy that standard regardless. Plaintiffs' letter told Defendant, through his counsel, that his October 7 video "reads as a threat directed at Plaintiffs' counsel." (Ex. B.) Defendant published that letter, wrote that "Chris & his family are scared," and continued.

Even apart from true threats, the First Amendment does not protect harassment. "[C]ourts have made a distinction between communication and harassment," and "courts do have the power to enjoin harassing communication." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005). As the court explained in *United Artists*, where the communications arise from the underlying lawsuit, "[c]onduct that might not be harassing under other circumstances becomes so here, because it is obvious that [the defendant] is improperly trying to intimidate anyone who dares to oppose him." 2019 WL 6917918, at *10. The same is true here. Defendant's posts serve no purpose other than to intimidate the lawyers who obtained a verdict against him and the people closest to them.

## C. The Requested Order Is Narrowly Tailored.

Plaintiffs do not ask the Court to bar Defendant from discussing this case, criticizing the verdict, or commenting on the Court's rulings. They ask only that he be prohibited from directing threats and harassment at specific, identified people. That is precisely the portion of the injunction the Fifth Circuit upheld in *Test Masters*; the court vacated only the separate provision that barred *all* communication with the protected persons. 428 F.3d at 580. As the *United Artists* court observed, an order limited in this way "does not prevent [the defendant] from expressing his views about Plaintiff or this action so long as he does so in a manner that does not constitute personal harassment." 2019 WL 6917918, at *11.

Plaintiffs also tried the less restrictive alternative first. They asked Defendant, through counsel, to stop, and told him plainly that he remained free to comment on the case. He answered by publishing the request and escalating. No lesser measure remains.

## D. The Equitable Factors Favor Relief.

To the extent the Court considers the traditional factors for injunctive relief, each favors Plaintiffs. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

*Likelihood of success.* In this context, the first factor asks whether Plaintiffs are likely to show harassment, not whether they will prevail on the underlying claims. *United Artists*, 2019 WL 6917918, at *8. Defendant's own words, quoted above, make that showing.

*Irreparable harm.* Defendant's conduct has escalated after notice, and he has told his audience to "watch what I post next." Where a defendant's "behavior has escalated over time, and he has threatened future harassment," irreparable injury is "likely and imminent." *United Artists*, 2019 WL 6917918, at *11. Intimidation of counsel also threatens Plaintiffs' interest in this case, because it may deter counsel "from fully participating in this lawsuit as legal representatives." *Id.* Defendant's history in this case also shows that an informal request will not stop him: he has previously misrepresented that he had removed offending posts and has missed deadlines set by the Court's own orders. (Doc. 61 at 7–8; Doc. 81.)

*Balance of harms.* An order prohibiting threats and harassment directed at specific people "would not impose significant hardship" on Defendant. *United Artists*, 2019 WL 6917918, at *11. It does not prevent him from pursuing his post-trial motion, communicating with his counsel, or expressing his views about this case.

*Public interest.* The order "would help ensure the fair administration of justice" by ensuring that counsel "can fully participate in this lawsuit without the fear of receiving harassing communications." *Id.*

Because the requested order protects the Court's proceedings and imposes no compensable harm on Defendant, Plaintiffs ask that no bond be required, or that any bond under Federal Rule of Civil Procedure 65(c) be nominal.

### E. The Order Should Bind Those Acting in Concert with Defendant and Should Be Delivered to Him Directly.

Defendant speaks to a large online audience, and the trial record reflects that members of that audience have issued threats of their own. (*See* Trial Tr. Vol. 2, Doc.

120, at 118:10–23, 150:9–24.) The order should therefore bind not only Defendant but also "the parties' officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation" with them who receive actual notice of the order. Fed. R. Civ. P. 65(d)(2).

Because defense counsel have reported that they cannot reach Defendant, Plaintiffs further ask that the Court direct defense counsel to transmit the order to Defendant by every means available to them, including email, text message, and Defendant's social-media accounts, and to file a notice confirming that they have done so. That step will foreclose any later claim that Defendant lacked notice of the order. The Court used a similar mechanism in its March 2, 2026 order, requiring defense counsel to personally confirm Defendant's removal of protected material and to file a notice certifying compliance. (Doc. 61 at 11.)

## IV. REQUEST FOR EXPEDITED CONSIDERATION

Defendant has continued his conduct after notice and has promised more. Plaintiffs therefore request that the Court order Defendant to respond to this motion within seven (7) days, rather than the fourteen days provided by Local Rule 7.01(a)(3), and set a hearing at the Court's earliest convenience.

## V. STATEMENT UNDER LOCAL RULE 7.01(a)(1)

Plaintiffs' counsel sought to confer with defense counsel by letter dated October 8, 2026, which described the relief requested in this motion, proposed submitting it as an agreed order, and asked defense counsel to state whether Defendant agreed or opposed. (Ex. B.) On October 8, defense counsel advised by phone that they had been

unable to reach Defendant. Defense counsel was also unaware that Defendant had publicly posted Plaintiffs' counsel's letter to his Instagram page. (Ex. C ¶¶ 5–6.) Defense counsel therefore could not state Defendant's position, and Plaintiffs presume the motion is opposed.

## VI. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court enter an order:

1. Prohibiting Defendant Ryan Upchurch, his agents, and all persons in active concert or participation with him who receive actual notice of the order, from posting, publishing, or otherwise communicating, on Instagram or any other platform or by any direct means, threatening or harassing statements directed at Christopher Smith, David Randolph Smith, Dominick R. Smith, or David Anthony Smith, or at members of their families;

2. Directing Defendant to remove, within twenty-four (24) hours of the order, the October 7, 2026 video and the October 8 post described above, while preserving the original files;

3. Providing that nothing in the order restricts Defendant from commenting on this case, the verdict, or the Court's rulings in a manner that does not threaten or harass the persons identified above;

4. Directing defense counsel to transmit the order to Defendant by all available means and to file a notice confirming that they have done so;

5. Setting an expedited response deadline and a hearing on this motion at the Court's earliest convenience; and

6. Granting such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Christopher Smith

DRS LAW

Christopher Smith, BPR #034450
David Randolph Smith, BPR #011905
Dominick R. Smith, BPR #028783
David Anthony Smith BPR #041695
1913 21st Avenue South
Nashville, Tennessee 37212
Phone: 615-742-1775
Fax: 615-742-1223

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent via the Court's ECF system to the following parties on October 8, 2026, to:

Dennis Disney

dennis@shrumdisney.com

Barry Shrum

barry@shrumdisney.com

*/s/ Christopher Smith*