**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| DAVID ROBERTSON and | ) | |
| DANIEL RODNI, | ) | |
| | ) | Case No. 3:23-cv-00770 |
| Plaintiffs, | ) | |
| | ) | Judge Campbell |
| v. | ) | Magistrate Judge Holmes |
| | ) | |
| RYAN UPCHURCH, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR AN ORDER PROHIBITING DEFENDANT FROM THREATENING OR HARASSING PLAINTIFFS' COUNSEL AND THEIR FAMILIES (DOC. 128)**

Defendant RYAN UPCHURCH ("Mr. Upchurch"), through counsel, responds in opposition to Plaintiffs' Expedited Motion and Memorandum of Law for an Order Prohibiting Defendant from Threatening or Harassing Plaintiffs' Counsel and Their Families (Doc. 128) (the "Motion").

## PRELIMINARY STATEMENT REGARDING REPRESENTATION

Before turning to the Motion, the Court should know where Mr. Upchurch's representation stands. On October 9, 2026, Mr. Upchurch terminated Shrum Disney & Associates, Attorney Shrum, and undersigned counsel. He did so contemporaneously with Plaintiffs' Motion and shortly before the Court entered its Order setting the response deadline. (Doc. 129) Until the Court permits us to withdraw, Shrum Disney & Associates acknowledges that it remains counsel of record, and its obligations to the Court continue. Out of an abundance of caution, undersigned counsel files this response to ensure the record is complete and that Mr. Upchurch's position is properly before the Court.

On October 9, 2026, Shrum Disney & Associates submitted written notice to Mr. Upchurch of its intent to withdraw as counsel and Mr. Upchurch has acknowledged receipt. See Exhibits A and B attached hereto. Under the Court's rules, that motion to withdraw can't be filed until October 23, 2026, which is six (6) calendar days before the Court-ordered hearing. Unless the Court directs otherwise, undersigned counsel is prepared to appear with Mr. Upchurch on October 29.

## INTRODUCTION

Plaintiffs, or more precisely and accurately Plaintiffs' counsel ("Pltfs' Counsel"), ask this Honorable Court to do something the First Amendment almost never permits. They want an order telling a private citizen, in advance and on pain of contempt, what he may say about the lawyers who sued him and about those lawyers' families. They describe the request as narrow. It isn't.

What, exactly, is a "harassing statement"? Is it an insult? A crude joke built on a surname? A post that mentions counsel's father, who is also counsel of record? A religious caption about Zeus and the Titans? Plaintiffs' proposed order doesn't say. And that silence is the problem, because the answer would be supplied later, by Pltfs' Counsel, in a contempt motion.

Let's be clear about what this response is not. It isn't a defense of Mr. Upchurch's manners. The October 7 video was crude, profane, and personal, and we don't contend otherwise. But offensive speech isn't unlawful speech. The space between the two is exactly where the First Amendment does its work, and Pltfs' Counsel's Motion asks the Court to close that space by order.

The Motion fails at the threshold, and it fails on the merits. At the threshold, Plaintiffs aren't the real parties in interest, and they lack standing to seek personal protection for their lawyers or their lawyers' families. On the merits, the Motion fails for four independent reasons. First, the relief Pltfs' Counsel seek is a prior restraint, and they haven't carried the heavy burden that comes with one. Second, the statements aren't "true threats" under *Counterman v. Colorado*, 600 U.S. 66 (2023), either

objectively or as to Mr. Upchurch's state of mind. Third, there is no freestanding "harassment" exception to the First Amendment that reaches public commentary about one's litigation adversaries, and neither the Court's inherent authority nor the All Writs Act creates one. And, fourth, the proposed order is too vague to obey and too broad to enforce. The Motion should be denied.

## I. RELEVANT BACKGROUND

### A. The Posture of the Case

After a five-day trial, the jury returned its verdict, judgment was entered on May 20, 2026, and the jury was discharged. (Docs. 112, 116) What remains is Mr. Upchurch's renewed motion for judgment as a matter of law or, alternatively, for a new trial or remittitur. (Doc. 118) That motion is fully in the Court's hands. No jury remains to be influenced. No witness remains to be examined.

Plaintiffs are represented by four lawyers at DRS Law who share a surname: Christopher Smith, his father David Randolph Smith, and his brothers Dominick R. Smith and David Anthony Smith. (Doc. 128 at 3)

### B. The October 7 Video

Mr. Upchurch acknowledges posting the October 7 video. He disputes what Pltfs' Counsel say it means.

Pltfs' Counsel's own transcript shows what the video actually was. It opens with a riff on the surname "Smith": a callback to an earlier phrase, "no smithin' around"; a pun on "the Smithsonian"; a detour through Pocahontas and John Smith; a theory about why people say "John Doe"; and a reference to John the Baptist. (Ex. A at 2) Only then does Mr. Upchurch turn to Christopher Smith, telling him that "[t]he Smiths got it coming," that he has "got it coming to you," and asking whether he, his father, and his brother are "ready for all this bad luck" they're "finna have." (*Id.* at 2–3) The video closes with insults, including that counsel's father is "a fat fucking rat." (*Id.* at 3)

The language is ugly. But notice what isn't there. There is no weapon. There is no act of violence named. There is no time, no place, no method, no demand, and no instruction to anyone to do anything. "Bad luck" is, by definition, something that happens to a person. It isn't something one person does to another.

By Pltfs' Counsel's own account, the October 7 video is no longer on Mr. Upchurch's account. (Doc. 128 at 2; Ex. C ¶ 3) The copy Pltfs' Counsel cite lives on a third-party "fan account." (*Id.*)

## C. Plaintiffs' Letter

On October 8, Pltfs' Counsel sent a letter to defense counsel asking for written confirmation, by the next day, of five commitments. (Ex. B) The letter also announced that Pltfs' Counsel were "treating the video seriously and will report it to law enforcement." (*Id.* at 2) Defense counsel forwarded the letter to Mr. Upchurch the same day but couldn't reach him. (Ex. C ¶ 5) Pltfs' Counsel filed the Motion that same day.

## D. The October 8 Post

Mr. Upchurch then posted the letter and a second video. Its captions read, in full:

> God told me to tell you and your family this Chris. You might be scared but he's the one who's scaring you. There is nothing I can do about it, he's in Charge.
>
> Chris & his family are scared because they know God is on Earth. And he is striking down everyone consumed with the idea that they are allowed use Zues' [*sic*] lightning for themselves that's why things are SHOCKINGLY accurate right now. Now after I post this, watch what I post next, because it will show you the chosen ones are in charge right now. The Titans have all come back to Earth. And they are all over the shoulder of the bad guys. We hear everything you say and see everything you do. #KINGTRUMP #ALLHISTITANS #HB

(Doc. 128 at 6–7; Ex. C ¶ 7) Pltfs' Counsel quote this post in fragments. Read whole, it's a religious and political declaration, complete with Zeus, the Titans, the "chosen ones," and a pair of political

hashtags. And its central sentence disclaims any human agency at all: "There is nothing I can do about it, he's in Charge." That isn't a man announcing what he'll do. It's a man announcing what he believes God will do.

## II. THE MOTION FAILS AT THE THRESHOLD BECAUSE PLAINTIFFS ASSERT INJURIES THAT AREN'T THEIRS

### A. Plaintiffs Aren't the Real Parties in Interest and Haven't Shown a Personal Injury

Before the Court ever reaches the First Amendment, there's a more basic problem. The Motion should be denied because Plaintiffs haven't shown that they are the real parties in interest with respect to the personal-protection relief they seek. The statements at issue are directed at Pltfs' Counsel and Counsel's family members. Plaintiffs haven't identified any statement directed at either Plaintiff, any injury personally suffered by either Plaintiff, or any legal basis for Plaintiffs to obtain personal protection on behalf of persons who aren't the parties seeking relief. That isn't a technicality. It goes to who may ask for this relief at all.

The Federal Rules state the requirement plainly:

> An action must be prosecuted in the name of the real party in interest.

Fed. R. Civ. P. 17(a)(1).

The Motion doesn't establish that Plaintiffs possess the substantive right allegedly affected by the challenged statements. Nor does it establish that Plaintiffs themselves suffered an injury fairly traceable to those statements. That matters. Article III standing requires a plaintiff to show an injury in fact that is concrete, particularized, and actual or imminent; that the injury is fairly traceable to the challenged conduct; and that the injury is likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). And a plaintiff generally may not assert the legal rights or interests of another person. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Here, the Motion seeks an order protecting four attorneys and their families. But Plaintiffs haven't shown that they're legally entitled to seek that relief for those individuals. Plaintiffs' status as parties to this lawsuit doesn't give them standing to assert independent personal-protection claims belonging to their attorneys or to members of their attorneys' families. Nor does the fact that Pltfs' Counsel represents Plaintiffs transform Pltfs' Counsel's personal interests, or the interests of counsel's family members, into injuries suffered by Plaintiffs. Plaintiffs can't borrow their lawyers' grievances and wear them as their own.

The requested relief therefore presents a threshold defect, separate from the merits of whether the challenged statements constitute true threats or unlawful harassment. Before the Court may adjudicate the requested personal-protection relief, the persons seeking that relief must establish that they're the proper parties to request it and that they've suffered, or face an imminent risk of, a legally cognizable injury. Plaintiffs haven't made that showing.

Accordingly, the Court should deny the Motion because Plaintiffs haven't shown that they are the real parties in interest with respect to the protection sought for Pltfs' Counsel or Pltfs' Counsel's family, and because they haven't shown that they personally suffered an injury from statements directed at those persons.

## B. Plaintiffs Lack Standing to Seek Personal Protection for Pltfs' Counsel or Pltfs' Counsel's Family

For the same reason, Plaintiffs lack standing to seek personal protection for their attorneys or for members of their attorneys' families. Standing isn't established by a generalized concern for the safety or well-being of another person. The party invoking federal jurisdiction must demonstrate an injury to that party's own legally protected interest. *Lujan* at 560.

The Motion doesn't allege facts showing that either Plaintiff was threatened, targeted, contacted, or otherwise injured by the statements at issue. Instead, it asks the Court to protect nonparty

attorneys and family members from alleged threats or harassment directed at them. Any personal injury those individuals allegedly suffered belongs to them. It doesn't belong to Plaintiffs. The requested injunction would therefore rest on interests Plaintiffs don't own and injuries Plaintiffs haven't suffered.

The Court should hold that Plaintiffs lack standing to seek personal protection for Pltfs' Counsel or Pltfs' Counsel's family and deny the Motion on that independent ground. That holding wouldn't prevent an allegedly threatened person from seeking relief in the proper capacity, upon a proper factual and legal showing. It would simply require that the person whose rights and interests are at issue appear as the proper movant or real party in interest.

### C. Alternatively, the Motion Should Be Denied Without Prejudice Under Rule 17(a)(3)

Alternatively, if the Court concludes that the real-party-in-interest defect may be cured, the Motion should be denied without prejudice under Fed. R. Civ. P. 17(a)(3). The Rule provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.

Fed. R. Civ. P. 17(a)(3).

Rule 17(a)(3), of course, addresses a failure to prosecute an action in the name of the real party in interest. But its procedure confirms that relief belonging to another person shouldn't be adjudicated in that person's absence. The Rule doesn't authorize Plaintiffs to obtain personal protection for persons who haven't appeared as proper movants. Instead, it provides a mechanism for permitting the real party in interest to ratify, join, or be substituted where appropriate.

The appropriate disposition, then, is to deny the Motion without prejudice and require any person seeking personal protection to file an appropriate motion in the proper capacity, supported by

that person's own allegations, evidence, and showing of standing. Any renewed motion should identify:

1. the person seeking protection;
2. the specific statements allegedly directed at that person;
3. the injury allegedly suffered or imminently threatened by those statements;
4. the legal basis for the requested relief; and
5. the precise conduct the person asks the Court to restrain.

That procedure would permit the Court to address a properly presented request without allowing one set of parties to assert the independent rights of counsel or counsel's family members. It would also ensure that any person seeking an injunction is subject to the ordinary requirements governing standing, real-party-in-interest status, notice, evidence, and the extraordinary nature of injunctive relief. Those requirements apply to everyone. They apply here.

## III. PLAINTIFFS' COUNSEL SEEK A PRIOR RESTRAINT, AND THEY HAVEN'T CARRIED THE BURDEN THAT COMES WITH ONE

Pltfs' Counsel ask the Court to (1) prohibit Mr. Upchurch from "posting, publishing, or otherwise communicating" any "threatening or harassing statements" about four lawyers and their families, and (2) order him to take down two posts. (Doc. 128 at 16) Both forms of relief suppress speech before any adjudication that the speech is unprotected. That is the definition of a prior restraint.

"The special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973). Any such restraint comes to court "bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). The party seeking it "carries a heavy burden of showing justification." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). Prior restraints are "the most serious and the least

tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

The Sixth Circuit applies that rule with full force, including to orders restricting a litigant's own speech about his own case. In *United States v. Ford*, 830 F.2d 596 (6th Cir. 1987), the court vacated an order restricting a criminal defendant's extrajudicial statements, holding that such an order requires a clear and present danger, that the threat must be "specific, not general," and that any restriction must be "couched in the narrowest terms that will accomplish the pin-pointed objective." *Id.* at 598–600. And in *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996), the court vacated a restraint entered in civil litigation, holding that a court may restrain speech only to protect "an interest more fundamental than the First Amendment itself." *Id.* at 227.

Interestingly, Pltfs' Counsel's Motion doesn't cite *Ford*, *Procter & Gamble*, *Nebraska Press*, or *Keefe*. It doesn't use the words "prior restraint" at all. Instead, it treats the request as an ordinary exercise of case management. But relabeling a speech injunction doesn't change what it is. Pltfs' Counsel must make a "clear showing" of entitlement to this "extraordinary remedy," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), and when the remedy is a restraint on speech, that showing must overcome the presumption above. They haven't.

## IV. THE STATEMENTS ARE NOT TRUE THREATS

### A. A True Threat Is a Serious Expression of Intent to Commit Unlawful Violence

True threats are "serious expression[s]" conveying that a speaker means to "commit an act of unlawful violence." *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). The category is narrow by design. Speech isn't a true threat because it is angry, profane, or frightening to the person it targets. The First Amendment protects "vehement, caustic, and sometimes unpleasantly sharp attacks." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51 (1988) (quoting *N.Y. Times Co. v.*

*Sullivan*, 376 U.S. 254, 270 (1964)). And it protects rhetorical hyperbole, because "[t]he language of the political arena . . . is often vituperative, abusive, and inexact." *Watts v. United States*, 394 U.S. 705, 708 (1969).

*Watts* is instructive. There, a young man at a public rally said that if he were drafted, "the first man I want to get in my sights is L.B.J." *Id.* at 706. The Supreme Court held that statement, which referred expressly to the President and to a rifle sight, was political hyperbole and not a true threat, given its public setting, its conditional framing, and its audience's reaction. *Id.* at 708. If a statement about putting the President in a rifle sight wasn't a true threat in context, then a question about whether a lawyer is "ready for all this bad luck," uttered on a widely viewed social media platform, isn't one either.

Here, context points the same direction. The October 7 video is a surname riff that wanders through the Smithsonian, Pocahontas, and John the Baptist before arriving at insults. The October 8 post invokes God, Zeus's lightning, and returning Titans. That is the vocabulary of mythology and grievance, not a plan of attack. Neither post names an act of violence, a weapon, a time, or a place, and neither asks anyone to do anything. The phrases Pltfs' Counsel rely on ("got it coming," "bad luck," "you might be scared," "watch what I post next") are, at most, ambiguous. And "watch what I post next" is, on its face, a promise of more posting. Speech announcing future speech isn't a threat of violence.

The table below captures the line the cases draw. Every challenged statement in Pltfs' Counsel's Motion falls in the left-hand column.

| **Protected (even when offensive)** | **True Threat** |
| --- | --- |
| Insults, profanity, ridicule, satire, wordplay, rhetorical hyperbole | A serious expression of intent to commit unlawful violence |

| Protected (even when offensive) | True Threat |
|---|---|
| Ambiguous phrases such as "you got it coming" or "bad luck" | A statement identifying intended physical harm |
| Religious or political declarations about what God or fate will do | A statement about what the speaker or his agents will do |
| No stated act, time, place, weapon, or plan | A communicated act of violence, often with details or demands |

### B. *Counterman*'s Mental-State Requirement Applies, and Plaintiffs' Counsel Haven't Met It

Pltfs' Counsel quote *Counterman* for the proposition that the existence of a threat depends "not on 'the mental state of the author,' but on 'what the statement conveys.'" (Doc. 128 at 10 (quoting 600 U.S. at 74)) That is half of the holding. The other half is the reason the case is famous: the First Amendment "still requires proof that the defendant had some subjective understanding of the threatening nature of his statements," meaning at least that he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." 600 U.S. at 69.

Pltfs' Counsel try to sidestep that requirement by noting that *Counterman* was a criminal case and that they "need not prove a crime." (Doc. 128 at 11) But the Court didn't ground the mental-state requirement in criminal law. It grounded it in the First Amendment, explaining that the requirement exists because of "what is often called a chilling effect," and to provide "breathing room" for protected speech that a purely objective test would deter. 600 U.S. at 75–78. That concern doesn't shrink when the sanction is civil contempt instead of a conviction. If anything, it grows, because an injunction chills speech before it's ever spoken.

Pltfs' Counsel's other Sixth Circuit authority makes the same point in reverse. *United States v. Jeffries*, 692 F.3d 473 (6th Cir. 2012), applied a purely objective test. That test is precisely what the Supreme Court later rejected, and Plaintiffs concede *Jeffries* was abrogated by *Elonis v. United States*,

575 U.S. 723 (2015). (Doc. 128 at 10) A case abrogated on the very question in dispute can't carry Plaintiffs' burden on that question.

On the merits of mental state, Pltfs' Counsel argue recklessness from the fact that Mr. Upchurch saw their letter and then posted again. (Doc. 128 at 11) But look at what he posted. After learning that Pltfs' Counsel read his video as a threat, Mr. Upchurch didn't double down with a threat of his own. He wrote that "God told me to tell you," that God was "the one who's scaring you," and that "[t]here is nothing I can do about it." Whatever else that caption is, it's a disclaimer of personal agency. Upon information and belief, Mr. Upchurch didn't intend either post as a threat of violence, and he didn't understand them as one. At a minimum, his state of mind is a contested question of fact that can't be resolved against him on a paper record and an expedited schedule.

### C. Plaintiffs' Counsel's Out-of-Circuit, Unpublished Authority Doesn't Fill the Gap

Lacking binding authority, Pltfs' Counsel build the core of their argument on unpublished district court decisions from California: *United Artists Corp. v. United Artist Studios LLC*, No. 2:19-cv-00828, 2019 WL 6917918 (C.D. Cal. Oct. 17, 2019), and *Beyond Blond Prods., LLC v. Heldman*, No. 2:20-cv-05581, 2022 WL 2784404 (C.D. Cal. June 17, 2022). (Doc. 128 at 9–13) Neither binds this Court. Neither was decided under *Counterman*'s mental-state standard; *United Artists* predates it by nearly four years. And a California court's reading of different words, from a different speaker, in a different dispute tells the Court nothing about what these words conveyed in this context.

Notably, Pltfs' Counsel cite no decision from the Sixth Circuit, or from any court in this District, enjoining a litigant's public social-media commentary about opposing counsel. Their Sixth Circuit citations establish only that courts possess inherent authority and that a threat can be delivered by video. Mr. Upchurch disputes neither proposition.

## V. THE FIRST AMENDMENT HAS NO FREESTANDING "HARASSMENT" EXCEPTION FOR PUBLIC SPEECH ABOUT ONE'S ADVERSARIES

Pltfs' Counsel's fallback is that "[e]ven apart from true threats, the First Amendment does not protect harassment." (Doc. 128 at 11) That framing does a lot of work. None of it holds up.

The Supreme Court has said repeatedly that speech doesn't lose protection because it wounds. Speech "cannot be restricted simply because it is upsetting or arouses contempt." *Snyder v. Phelps*, 562 U.S. 443, 458 (2011). "Speech may not be banned on the ground that it expresses ideas that offend." *Matal v. Tam*, 582 U.S. 218, 223 (2017). And a public figure can't recover even for a deliberately outrageous parody designed to cause emotional distress. *Hustler*, 485 U.S. at 56. Each of those cases involved speech at least as hurtful as anything here. In each, the speaker won.

Pltfs' Counsel's lead harassment case actually proves the point. In *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005), the Fifth Circuit recognized that "courts do have the power to enjoin harassing communication." *Id.* at 580. But it upheld only the portion of the injunction aimed at harassing communications and vacated the portion that swept further, barring all communication with the protected persons. *Id.* at 580. Pltfs' Counsel read that as approval of their order. (Doc. 128 at 12) It isn't. The lesson of *Test Masters* is that a court must police the line between harassment and protected expression with precision. Pltfs' Counsel's proposed order doesn't draw that line at all. It prohibits "harassing statements" posted "on Instagram or any other platform" about four lawyers and every member of their families, without defining harassment and without distinguishing a direct, unwanted communication from a public post that an adult can simply decline to watch. (Doc. 128 at 16)

That distinction matters. The harassment cases Pltfs' Counsel cite involve speech pushed at an unwilling listener. Mr. Upchurch's posts were published on his own account to his own audience. Nobody was required to watch them. Commentary about a public lawsuit, and about the lawyers who

chose to try it, is speech about a matter of public concern, and it sits at the center of the First Amendment's protection, not at its edge. *See Snyder*, 562 U.S. at 451–52.

## VI. INHERENT AUTHORITY AND THE ALL WRITS ACT DON'T AUTHORIZE THIS ORDER

We don't dispute that federal courts possess inherent authority to manage their proceedings, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), or that the All Writs Act permits orders in aid of a court's jurisdiction, 28 U.S.C. § 1651(a). But "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. And neither source of authority suspends the First Amendment.

Pltfs' Counsel's own Sixth Circuit authority confirms that inherent-power sanctions require "a finding of bad faith or of conduct 'tantamount to bad faith.'" *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (cited at Doc. 128 at 8). That finding hasn't been made. And it can't be made on this record without an evidentiary hearing.

More fundamentally, Pltfs' Counsel haven't connected the speech to any threat to the Court's proceedings. Restrictions on trial participants' speech are permissible only when tied to a real risk to the fairness of the proceeding. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075–76 (1991) (limiting regulation of attorney speech to statements "substantially likely to have a materially prejudicial effect"); *Ford*, 830 F.2d at 598–600. Here, there is no jury left to prejudice. The only matter pending is a post-trial motion that this Court will decide on the papers. Nothing Mr. Upchurch posted can affect that.

Plaintiffs suggest the posts may deter counsel "from fully participating in this lawsuit." (Doc. 128 at 13) Respectfully, the record shows otherwise. Pltf's Counsel sent a demand letter the day after the October 7 video and filed an eighteen (18) page motion with three (3) exhibits the same day. They are participating fully, and ably. The Court's processes are intact.

## VII. PLAINTIFFS COUNSEL HAVEN'T SATISFIED THE REQUIREMENTS FOR INJUNCTIVE RELIEF

Even under the traditional four-factor test, *Winter*, 555 U.S. at 20, the Motion fails.

**Likelihood of success.** Pltfs' Counsel say Mr. Upchurch's "own words" carry this factor. (Doc. 128 at 12) But their argument assumes the conclusion. Whether the words are true threats or unprotected harassment is the very question in dispute, and for the reasons above, Pltfs' Counsel haven't shown that they are. They haven't shown an express threat of violence, an identified act of harm, a stated time, place, or method, an instruction to anyone to harm or contact counsel, or the mental state *Counterman* requires.

**Irreparable harm.** Pltfs' Counsel rely on "watch what I post next" and on Mr. Upchurch's earlier dispute over the protective order. (Doc. 128 at 13) The first is a promise of future speech, and the possibility of future speech is never, by itself, a basis to enjoin it. The second concerned the publication of deposition video, not threats, and the Court addressed it with the tools already available to it, including sanctions. (Doc. 61) That history shows the ordinary process works. It doesn't show that Mr. Upchurch's speech will cause irreparable injury. Pltfs' Counsel also point to trial testimony that a third party once made a threatening remark to Mr. Robertson. (Doc. 128 at 13–14) Mr. Upchurch didn't make that remark. An injunction against him can't be justified by the independent conduct of others.

**Balance of harms.** On one side is a restraint on Mr. Upchurch's speech, enforceable by contempt, keyed to a term no one has defined. On the other, Pltfs' Counsel retain every remedy the law already provides. Indeed, their own letter said they would report the video to law enforcement. (Ex. B at 2) If Mr. Upchurch ever does make an explicit threat of violence, the criminal law and the Court's contempt power stand ready. A sweeping prior restraint isn't needed to protect against conduct that is already unlawful.

**Public interest.** The public interest is never served by an unconstitutional restraint on speech. And it's particularly ill-served by one that lets an adversary decide, in the first instance, which of a litigant's criticisms count as "harassment."

## VIII. THE PROPOSED ORDER IS VAGUE AND OVERBROAD

Every injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A), (B), (C). That requirement carries special weight when the restrained conduct is speech, because a person who can't tell where the line is will stay far back from it. The Supreme Court set aside attorney discipline in *Gentile* for exactly that reason, finding the rule there void for vagueness as applied. 501 U.S. at 1048–51.

Pltfs' Counsel's proposed order doesn't tell Mr. Upchurch:

- what makes a statement "harassing";
- whether criticism of counsel's trial performance is prohibited;
- whether insults, satire, or wordplay on the name "Smith" are prohibited;
- whether any mention of counsel's family, however benign, is prohibited;
- whether reposting or commenting on Plaintiffs' own public filings is prohibited; or
- what state of mind, if any, is required for a violation.

Pltfs' Counsel's own Motion treats threats and harassment as distinct categories. (Doc. 128 at 9–11) Yet the order would prohibit both, and the second category has no defined edge. The result would be a speech code with a contempt hammer attached. And Pltfs' Counsel would be the first to decide when to swing it.

## IX. THE TAKEDOWN REQUEST AND THE THIRD-PARTY PROVISIONS SHOULD BE DENIED

Pltfs' Counsel also ask the Court to order Mr. Upchurch to remove the October 7 video and the October 8 post within twenty-four (24) hours. (Doc. 128 at 16) Compelled removal of speech, before any adjudication that the speech is unprotected, is the paradigm prior restraint. *Pittsburgh Press*, 413 U.S. at 390. And as to the October 7 video, the request is moot: Pltfs' Counsel concede it is no longer on Mr. Upchurch's account. (Doc. 128 at 2 n.1; Ex. C ¶ 3) The copies Pltfs' Counsel reference are on accounts Mr. Upchurch doesn't own or control.

For the same reason, the Court should decline Pltfs' Counsel's invitation to extend any order to Mr. Upchurch's online audience. Rule 65(d)(2) binds only parties, their agents, and those "in active concert or participation" with them who receive actual notice. It doesn't make a speaker answerable for the independent acts of everyone who follows him on social media.

Mr. Upchurch doesn't oppose a narrowly tailored order requiring him to preserve the original files of both posts. Preservation protects any legitimate evidentiary interest without suppressing speech. And defense counsel will, of course, transmit any order the Court enters to Mr. Upchurch by every available means, which makes Plaintiffs' proposed notice-and-certification mechanism unnecessary.

## X. CONCLUSION

What happens if this Motion is granted? Not just here, but in the next case, and the one after that? Every hard-fought lawsuit produces a losing party with something unkind to say about the lawyers who beat him. If crude insults and ambiguous references to "bad luck" are enough to support a prior restraint, then every verdict comes with a gag order attached, and opposing counsel holds the key to it.

Mr. Upchurch's statements were insults. They were wordplay. They were religious and political declarations, and expressions of anger about a verdict he believes was wrong. They weren't threats of violence, and Pltfs' Counsel haven't shown that he meant or understood them as threats. The statements may be offensive. The First Amendment protects them anyway. The Court should deny the Motion in its entirety.

In the alternative, if the Court is inclined to consider any relief, Mr. Upchurch respectfully requests that the Court first set an evidentiary hearing, and that any resulting order:

1. be limited to explicit threats of unlawful physical violence;
2. require proof of Mr. Upchurch's subjective understanding consistent with *Counterman v. Colorado*, 600 U.S. 66 (2023);
3. expressly exclude criticism, insults, satire, wordplay, religious expression, and commentary about this lawsuit, the verdict, counsel's performance, or the Court's rulings;
4. contain specific definitions and objective standards;
5. reach only conduct by Mr. Upchurch or persons acting at his direction, not the independent conduct of third parties; and
6. require preservation, not removal, of the challenged posts.

Respectfully submitted,

/s/ Dennis G. Disney

Dennis G. Disney, BPR No. 041547
SHRUM DISNEY & ASSOCIATES, P.C.
54 Music Square East, Suite 350
Nashville, Tennessee 37203
(615) 338-5130
dennis@shrumdisney.com

*Counsel for Defendant Ryan Upchurch*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2026, a copy of the foregoing was filed through the Court's CM/ECF system and also sent via email to the following counsel of record:

Christopher Smith
csmith@drslawfirm.com

David Randolph Smith
drs@drslawfirm.com

Dominick R. Smith
dom@drslawfirm.com

David Anthony Smith
das@drslawfirm.com

DRS LAW
1913 21st Avenue South
Nashville, Tennessee 37212
*Counsel for Plaintiffs*

/s/ Dennis G. Disney
Dennis G. Disney